

2014 JUL 28 AM 9: 55

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70036-7-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JAMEL OMARI FIELDS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 28, 2014 |
| | ) | |

BECKER, J. — Ineffective assistance of counsel is a manifest injustice that justifies the withdrawal of a guilty plea. To establish deficient performance of counsel, a defendant must overcome the presumption that counsel's performance was adequate. Because the defendant did not overcome that presumption, we affirm the trial court's denial of his motion to withdraw.

On February 24, 2012, at 9:35 p.m., Francisco Villegas was attacked and robbed by a group of people while walking along Second Avenue near University Street in downtown Seattle. Two people who witnessed the attack from across the street called the police as it occurred and reported that the group had moved one block northward toward Union Street. Two bicycle officers who were nearby at the time arrived at Second and Union almost immediately. They observed a group of five people nearby, one of whom was wearing a black leather jacket with a Seahawks logo on it. Hearing that the witnesses described the jacket as more

like a NASCAR jacket, the officers continued down towards University Street. By this time, other responding officers had heard from Villegas himself that the person who hit and kicked him was an African-American male "maybe wearing a Seahawks jacket." The bicycle officers returned to Second and Union and detained the group they had seen previously. The person wearing the Seahawks jacket, an African-American male, was Jamal Fields. A backpack and phone belonging to Villegas were found on the ground nearby.

The bicycle officers detained the group. More officers arrived. Villegas was brought to the scene for a show-up identification. Villegas stated he was "absolutely positive" Fields was his attacker and that the others were the persons who were with Fields during the assault. Fields, when searched, did not have any property belonging to Villegas.

On February 29, 2012, the State charged Fields with one count of robbery in the first degree. At this time, Fields was the defendant in a pending unrelated criminal case. In that case, Fields was charged with possession of cocaine and forgery as a result of events that transpired on October 7, 2011.

On July 24, 2012, two days into trial on this case, Fields entered into a negotiated global settlement. The State agreed to dismiss the cocaine charge and reduce the first degree robbery charge to second degree robbery in exchange for a guilty plea on both the robbery and forgery charges. Under the plea agreement, the standard range of over 70 months was reduced to a range of 22 to 29 months. The State agreed to recommend a low-end sentence of 22 months concurrent with the sentence recommended under the other cause

number. Fields entered a plea to the robbery charge under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). He pleaded guilty to the forgery charge. The plea agreement stated that "this is part of an indivisible agreement" including both cause numbers.

On August 29, 2012, the trial court permitted withdrawal of counsel for Fields and instructed the Office of Public Defense to appoint new counsel.

On December 14, 2012, Fields, represented by new counsel, filed a motion to withdraw his Alford plea. The motion was based on a claim for ineffective assistance of counsel. An expert on eyewitness identification had reviewed the evidence and identified concerns that might have been used to undermine a jury's confidence in Villegas' ability to accurately identify Fields. Fields argued that his former attorney had failed to properly evaluate the evidence identifying him as the robber and performed deficiently by failing to hire an expert or otherwise challenge the reliability of cross-racial identification. Fields alleged that he would not have entered the Alford plea if his attorney had told him that the weakness of cross-racial eyewitness identification was a viable defense.

On February 8, 2012, the court heard the motion. The State called George Sjursen, the attorney who represented Fields on the robbery charge. Sjursen testified that his trial strategy would have been to attack the eyewitness identification of Fields by calling witnesses who thought that another person, Gregory Hughes, had committed the robbery:

Q. When you came into court on the trial, did you feel like you were ready to proceed and attack—and to attack the State's case regarding identification?

A. Yes, I do.

. . . .

A. Well, because, number one, there were two eyewitnesses that were going to be called by the State that we interviewed. I think actually the day of trial we actually finally got in touch with them and interviewed them that provided a different description. I think they said specifically that they remembered the person wearing a NASCAR type jacket, and the alleged victim said that the jacket was a Seahawks jacket. And I felt that this was good information. On top of that I had subpoenaed—I was able to go back last night and check and I had subpoenaed Sirronald Hicks and I believe a Ms. Turner. I believe she went by Angel, I think that was the sister. Now, Ms. Turner didn't exactly see the incident but she did see—I think she did see Mr. Hughes there. And then Mr. Hicks described someone else as doing it.

But these people were subpoenaed and I think I provided both counsel copies.

The court denied Fields' motion to withdraw his Alford plea. The court stated that Sjursen performed well in representing Fields and that whether or not to hire an eyewitness identification expert was a matter of strategy.

I am not sure at all that I even would have admitted an eyewitness expert, and I do not believe that they're terribly persuasive. I think that the Supreme Court Justices who have opined on that are absolutely right.

So my sense here is that Mr. Fields got a really good defense from a really good defense attorney who fought for him all the way.

Following the State's recommendation, the court sentenced Fields to 22 months for the robbery charge and 3 months for forgery, to be served concurrently.

On appeal, Fields argues that the trial court erred in denying his motion to withdraw because "defense counsel's failure to investigate or challenge the cross-racial eyewitness identification constituted deficient performance of counsel."

The State points out that the remedy sought by Fields—withdrawal of his plea to robbery—is unavailable because it was part of an indivisible global plea agreement. State v. Turley, 149 Wn.2d 395, 69 P.3d 338 (2003). Under Turley, a trial court does not have the discretion to permit withdrawal of only one plea in a global agreement. Turley, 149 Wn.2d at 399. The State contends that Fields' appeal should be rejected out of hand because he moved to withdraw only the Alford plea to the robbery charge. We need not decide whether Fields' failure to move for withdrawal of the entire plea forecloses his appeal because his appeal lacks merit in any event.

We review a trial court's denial of a motion to withdraw for abuse of discretion. State v. Jamison, 105 Wn. App. 572, 589-90, 20 P.3d 1010, review denied, 144 Wn.2d 1018 (2001). "The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). A manifest injustice occurs when an attorney renders ineffective assistance of counsel while advising a defendant on a plea bargain. State v. Taylor, 83 Wn.2d 594, 597, 521 P.2d 699 (1974). Claims of ineffective assistance of counsel in the plea bargain context are governed by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Hill v. Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

To establish ineffective assistance of counsel, a defendant must prove that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced

5

the defendant. Strickland, 466 U.S. at 687. To establish deficient performance, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. Strickland, 466 U.S. at 689. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59.

In some cases, making cross-racial bias the focus of a challenge to eyewitness identification can be effective. While our Supreme Court has declined to adopt a general rule requiring instruction on the fallibility of cross-racial identification, a trial court retains the discretion to give such an instruction. State v. Allen, 176 Wn.2d 611, 294 P.3d 679 (2013). The trial court acknowledged that "the problems with eyewitness identification that are coming to light often affect people of color."

Fields argues that the trial court mistakenly assumed that because Villegas, a Hispanic, and Fields, an African-American, were both persons of color, the identification could not have been encumbered by cross-racial fallibility. What the court said was this:

> This is not as good a case for challenging eyewitness identification as others I have seen. Although it is true that the identification here is cross-racial, it is also true that Mr. Villegas is a person of color himself. And secondly, this offense took place and the defendant was located literally within minutes—within 15 minutes in terms of the identification procedure and sooner than that in terms of finding him right in the area of where this offense took place wearing distinctive clothing and very near and in the path of a backpack that belonged to Mr. Villegas, and that he obviously did know and positively identified as his own.
> Also the Court took a very hard look at the identification procedure in this case. There was no suggestiveness by the officer

6

who took Mr. Villegas to the scene to make an identification. There's no indication from anything Mr. Villegas said along the way that he was identifying based on clothing or identifying in a hasty way, and there was no reinforcement of his identification by the officer once he made the ID either.

Defense counsel stated that the court's remark was "disconcerting" in that cross-racial identification can also be unreliable when the individuals who are of different races are both persons of color. The court responded, "I know that. But I would point out that a lot of cross-racial identification issues have been with white people identifying black people, and that's not this case."

On this record, Fields has not overcome the presumption that defense counsel provided effective assistance. It is not necessarily always a sound strategy to bring racial differences into a challenge to eyewitness identification. As the trial court emphasized, Villegas positively identified Fields as his attacker almost immediately afterwards and the specific detail of the Seahawks jacket was highly corroborative. Villegas' backpack was found near Fields. Friends who Fields had hoped would come forward and identify Gregory Hughes as the robber did not respond to counsel's efforts to contact them, so there was no solid evidence of another suspect. To suggest under these circumstances that Villegas was mistaken because all African-American males must have looked the same to him would have posed a substantial risk of alienating the jury. Defense counsel's duty to reasonably evaluate the evidence against the accused does not require the attorney to inform a defendant of every possible defense.

We conclude that the trial court did not abuse its discretion when it denied Fields' motion to withdraw his guilty plea.

Affirmed.

WE CONCUR:

_Becker, J._

_Cox, J._